**The relief described hereinbelow is SO ORDERED.**

**Signed October 24, 2024.**

_____
**Ronald B. King**
**United States Bankruptcy Judge**


## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 24-10404-smr |
| INTEGRATIVE MEDICAL | § | |
| HOME CARE, PLLC | § | CHAPTER 11 |
| | § | SUBCHAPTER V |
| DEBTOR | § | |


### ORDER CONFIRMING DEBTOR'S
### AMENDED PLAN OF REORGANIZATION [ECF #77]
### UNDER 11 U.S.C. § 1191(b)

On October 24, 2024, the Court held a hearing (the "Confirmation Hearing") to consider

confirmation of the Amended Plan of Reorganization for a Small Business under Subchapter V of

Chapter 11 (the "Plan")[2] filed herein by Integrative Medical Home Care, PLLC (the "Debtor") on

September 4, 2024 (Docket No. 77). Present or making appearances at the hearing were counsel

for the Debtor, the Debtor's representatives, Yun W. Kim, M.D. and Mariah Barnes, Eric Terry,

---

[2] Capitalized terms used herein without definition shall have the meanings provided for in the Plan. In addition, any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

the Subchapter V Trustee appointed in this case (hereinafter "Sub V Trustee"), counsel for certain creditors who have entered an appearance in the Case, and the United States Trustee. The Court has reviewed the Plan, considered the documents admitted into evidence and the testimony of witnesses present at the hearing, considered the statements and arguments of counsel, the docket of the Bankruptcy Case, and considered any other relevant factors affecting the Cases as set forth on the record.

**Based upon the foregoing, the Court finds and determines as follows:**

A.      The Debtor filed this case on April 12, 2024 (the "Petition Date"), and was qualified to be a Debtor under 11 U.S.C. § 109. The Debtor was also qualified and elected to proceed as a small business Debtor under Subchapter V of the Bankruptcy Code as that term is defined by 11 U.S.C. § 1182(1).

B.      This Court has jurisdiction over the Cases pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and whether it should be confirmed. Venue in the Western District of Texas was proper on the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.

C.      Every person or entity required to receive notice of the hearing on confirmation of the Plan, as well as the Plan voting and Plan objection deadlines set by the Court, received timely and adequate notice as required by the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002 and 9014 and the Bankruptcy Code.

D.      The contents of the Plan (with any modifications as set forth below) satisfy the applicable requirements of 11 U.S.C. § 1190 and any other applicable requirements of the

Bankruptcy Code.

E.      The Plan (with any modifications as set forth below) and the Debtor has satisfied all applicable requirements for confirmation of the Plan under 11 U.S.C. § 1129(a), except for 11 U.S.C. § 1129(a)(8). Thus, the Plan cannot be confirmed under 11 U.S.C. § 1191(a).  However, the Plan can and should be confirmed under 11 U.S.C. § 1191(b), as the Plan (with any modifications as set forth below) does not discriminate unfairly and is fair and equitable with respect to each impaired class of claims and interests that have not accepted the Plan as required by 11 U.S.C. § 1191(c).

F.      The Plan (with any modifications as set forth below) and the Debtor has satisfied all other requirements of the Bankruptcy Code and Bankruptcy Rules necessary to confirm the Plan.

G.      The Court specifically finds that there is cause under 11 U.S.C. § 1194(b) for the Debtor to serve as the Disbursing Agent under the Plan.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AS FOLLOWS:**

1.      The Amended Plan of Reorganization for a Small Business under Subchapter V of Chapter 11 filed by the Debtor on September 4, 2024 (ECF No. 77) and attached hereto as **Exhibit A**, is hereby **CONFIRMED** and approved in each and every respect as a non-consensual plan pursuant to 11 U.S.C. § 1191(b), with the modifications set forth below. The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

2.      To the extent any objections to confirmation of the Plan have not been resolved or withdrawn, any such objections are hereby denied.

3.      The effective date of the Plan shall be November 12, 2024 ("Effective Date"),

notwithstanding anything to the contrary in the Plan

4.       In the event of a conflict between provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

5.       Within three (3) days after the Effective Date, the Debtor shall serve notice of (i) entry of this Confirmation Order; (ii) the occurrence of the Effective Date; and (iii) any bar dates and any other deadlines set by the Plan ("Notice"), pursuant to Bankruptcy Rule 3020(c). The Notice shall be sent to all creditors and parties-in-interest by first class mail, postage prepaid. The Debtor shall thereafter promptly file a copy of such Notice with proof of mailing with the Court.

6.       The provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are, as of the Effective Date, effective and binding on the Debtor, all creditors of the Debtor, and any other parties-in-interest, as well as their respective heirs, successors, assigns, or other persons claiming through them. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety subject to the modifications set forth herein. Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order, subject to the modifications set forth herein, and shall have the same binding effect of every other provision in the Plan, whether or not mentioned in this Confirmation Order.

7.       The Debtor shall make the payments to creditors required by the Plan under 11 U.S.C. § 1194(b) ("Disbursing Agent").

8.       The Disbursing Agent shall file a report six (6) months after the Effective Date and every six (6) months thereafter detailing payments made by the Debtor and disbursements made under the Plan.

9.      Except as otherwise provided in the Plan, no distributions will be made with respect to a disputed claim until the resolution of such dispute by settlement or final order. The provisions of this section are not intended to restrict payment of any allowed claims which are not disputed. Until a disputed claim is resolved, the Disbursing Agent shall hold any portion of plan payments that would be disbursed to the claimant if the claim were allowed in full, subject to a final resolution of the disputed claim. Upon resolution in favor of the allowed claim, the Disbursing Agent will distribute withheld funds to the claimant within the next payment period. If the disputed claim is disallowed, the Disbursing Agent will make withheld funds available to allowed claim holders in accordance with the terms of the Plan within the next payment period.

10.     Disbursements may be delivered by the Disbursing Agent to (i) the address listed on the Debtor's schedule; (ii) the address for payment set forth on a proof of claim filed by the claimant or its authorized agent; or (iii) at the address set forth in any written notices of change of address delivered to the Disbursing Agent. If any distribution to a claimant of an allowed unsecured claim is returned to the Disbursing Agent as undeliverable, no further distributions shall be made to such claimant unless and until the Disbursing Agent is notified in writing of such claimant's correct mailing address, at which time all currently due distributions shall be made to such claimant as soon as practicable. Undeliverable distributions shall remain in the possession of the Disbursing Agent until such time as a distribution becomes deliverable and shall not be supplemented with any interest, dividends, or other accruals of any kind. If, despite reasonable effort, the Disbursing Agent is unable to obtain the information necessary to deliver a distribution within six (6) months following the return of the undeliverable distribution, the Disbursing Agent shall deposit the amount with the Clerk of the Court in accordance with 11 U.S.C. § 347(a).

11.     The Trustee shall file all reports required by 11 U.S.C. §§ 1183(b)(1) and 704(a)(9)

in the manner prescribed by the United States Trustee Program. Upon the completion of the Plan, the Trustee shall file their final report and seek a discharge of their duties as Trustee.

12. The Trustee shall be compensated for their post-confirmation duties at their approved hourly rate. The Trustee may file a notice setting forth post-confirmation fees and expenses on a quarterly basis with the Court. All parties in interest will have fourteen (14) days after the notice is filed to object to the Trustee fees and expenses disclosed therein. If no objection is received, the Debtor shall pay the Trustee without further order of the Court.

13. The Trustee shall file a post-confirmation final fee application within ninety (90) days of the notice of completion of plan payments. The final fee application shall include all compensation received and disclosed in the quarterly post-confirmation notices filed with the Court.

14. The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

15. Nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtor's schedules or arising under chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are nonetheless owned by the Debtor on or before the Effective Date. After the Effective Date, the Debtor may, in accordance with the terms of the Plan, evaluate and determine whether to pursue any such retained claims.

16.     Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on or before the date of distribution provided for in the Plan to the address listed in the creditor's proof of claim filed in this Cases, or, if no proof of claim is filed, to the creditor's last known mailing address.

17.     Pursuant to 11 U.S.C. § 1192, within thirty (30) days of the filing of the Sub V Trustee's NDR or TFR, the Debtor shall file a motion for entry of the discharge order.   In the motion for entry of discharge, the Debtor shall certify that (1) all payments required under the confirmed plan have been made, (2) all administrative expenses, including the approved fees and expenses of the Subchapter V Trustee have been paid in full, and (3) that the Debtor is entitled to entry of discharge.

18.     The Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of 11 U.S.C. § 1141.

19.     The Court shall retain jurisdiction of these Cases for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d).

20.     All property of the estate shall remain vested in the estate until the Debtor completes all the payments under the Plan and a discharge is entered herein. In addition, property of the estate shall include all property identified in 11 U.S.C. § 1186.

21.     This Confirmation Order is a final order and effective and enforceable immediately upon entry and the period in which an appeal must be filed shall commence upon the entry hereof.

22.     The following Nonmaterial Plan Modifications are hereby approved: NONE

# # #

Submitted by:

Frank B. Lyon
(Texas State Bar No. 12739800)
*Physical Address:*
3800 North Lamar Boulevard, Suite 200
Austin, Texas 72756
*Mailing Address*:
Post Office Box 50210
Austin, Texas 78763
Telephone:   512.345.8964
Facsimile: 512.697.0047

*Counsel for Integrative Medical Home Care, PLLC.*

# EXHIBIT
# A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **INTEGRATIVE MEDICAL** | § | **CASE NO. 24-10404-SMR** |
| **HOME CARE, PLLC** | § | |
| | § | **CHAPTER 11** |
| | § | **SUBCHAPTER V** |
| | § | |
| | § | |

## DEBTOR'S AMENDED PLAN OF REORGANIZATION
## <u>DATED SEPTEMBER 4, 2024</u>

Frank B. Lyon
Physical Address:
3800 N. Lamar - Suite 200
Austin, Texas 78756
Mailing Address:
Post Office Box 50210
Austin, Texas  78763
(512) 345-8964
(512) 697-0047 (facsimile)
Email: frank@franklyon.com

ATTORNEY FOR
INTEGRATIVE MEDICAL
HOME CARE, PLLC.
DEBTOR-IN-POSSESSION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| INTEGRATIVE MEDICAL | § | CASE NO. 24-10404-SMR |
| HOME CARE, PLLC. | § | |
| | § | |
| | § | |
| Debtor | § | CHAPTER 11, SUBCHAPTER V |
| | § | |
| | § | |

**DEBTOR'S AMENDED PLAN OF REORGANIZATION**
**DATED SEPTEMBER 4, 2024**

Integrative Medical Home Care ("IMHC") the Debtor herein (hereinafter referred to as the "Debtor") proposes the following Amended Joint Plan of Reorganization ("Plan") Dated September 4, 2024, pursuant to Subchapter V of Chapter 11, Title 11, United States Code ("Bankruptcy Code" or "Code").

**SUMMARY OF THE PLAN**

This is a plan of reorganization. Creditors will be paid from the Debtor's operating income.

**ARTICLE I**
**DEFINITIONS AND USE OF TERMS**

1.01 **Defined Terms.** The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

1.02 **Supplemental Terms.** The following supplement defined terms in the Code.

1.02(a) **Administrative Expense Claim** means an administrative expense or Claim described in 11 U.S.C. § 503 and entitled to administrative priority pursuant to 11 U.S.C. § 507(a)(1), including but not limited to Claims for compensation of professionals made pursuant to 11 U.S.C. §§ 330 and 331, and all fees and charges assessed against either or both of the Debtor or his property under 28 U.S.C. § 1930, which arose after August 9, 2023.

1.02(b) **Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (i) a proof of claim, proof of interest, or request for payment was timely filed or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent or

unliquidated, and to which no objection has been timely filed or, if filed, is allowed by a Final Order.

1.02(c)    **Allowed Secured Claim** means an Allowed Claim secured by a lien, security interest or other charge or interest in property in which the Debtor have an interest, to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

1.02(d)    **Bankruptcy Court** means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or such other Court that may have jurisdiction with respect to Debtor's case.

1.02(e)    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as applicable from time to time to the Debtor's case.

1.02(f)    **Bar Date** means the date subsequent to which a proof of pre-petition Claim may not timely be filed or the date by which proofs of claims held by governmental agencies must be filed.  The Bar Date in this Case was June 21, 2024.

1.02(g)    **Business Day** means a day that the office of the Clerk of the Bankruptcy Court is open for business as usual.

1.02(h)    **Case** means this Subchapter V case.

1.02(i)    **Claimant** means any person or entity having or asserting a Claim in this case.

1.02(j)    **Class** or **Classes** mean all of the Claims that the Debtor have designated pursuant to 11 U.S.C. § 1190, as described in Article V of this Plan.

1.02(k)    **Confirmation** means the entry by the Bankruptcy Court of an order confirming this Plan.

1.02(l)    **Confirmation Date** means the date the Confirmation Order is entered.

1.02(m)    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to 11 U.S.C. § 1191.

1.02(o)    **Debtor** means IMHC.

1.02(p)    **Disposable Income** means the Debtor's "disposable income" as measured under 11 U.S.C. § 1191(c).

1.02(q)     **Disputed Claim** means any Claim as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by Final Order.

1.02(r)     **Effective Date** means the first Business Day after the Confirmation Order becomes a Final Order.

1.02(s)     **Estate** means the estate created pursuant to 11 U.S.C. §§ 541 and 1186 with respect to the Debtor.

1.02(t)     **Fee Claim** means a Claim under 11 U.S.C. § 330 or § 503 for allowance of compensation and reimbursement of expenses to professionals in this Case.

1.02(u)     **Filed** means delivered to the Clerk of the Bankruptcy Court or filed electronically with the Bankruptcy Court.

1.02(v)     **Final Order** means an Order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties as to which the time to appeal has expired and as to which a stay pending appeal has not been granted.

1.02(w)     **General Unsecured Claim** means an Unsecured Claim that is not entitled to priority under the Code.

1.02(x)     **Impaired** means the treatment of an Allowed Claim pursuant to the Plan *unless,* with respect to such Claim, either (a) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of an Allowed Claim of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of an Allowed Claim of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (i) cure any default that occurred before or after the commencement of the Case on the Petition Date, other than default of the kind specified in 11 U.S.C. § 365(b)(2), (ii) reinstates the maturity of such Claim as such maturity existed before such default, (iii) compensates the holder of an Allowed Claim of such Claim for any damages incurred as a result of any reasonable reliance by such holder of an Allowed Claim on such contractual provision or such applicable law, and (iv) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of an Allowed Claim of such Claim; or (c) the Plan provides that on the Effective Date the holder of an Allowed Claim of such claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

1.02(y)     **Petition Date** means April 12, 2024, the date on which the Debtor filed its petitions for relief in this Case.

1.02(z)     **Pre-petition** means prior to the Petition Date.

1.02(aa)     **Priority Creditor** means a Creditor whose Claim is entitled to priority under 11 U.S.C. § 507.

1.02(bb)     **Pro-Rata** means proportionately, based on the percentage that the amount of a Claim is of the total of Allowed Claims in its Class.

1.02(cc)     **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in 11 U.S.C. § 541.

1.02(dd)     **Reorganized Debtor** means the Debtor after the Effective Date of the Plan.

1.02(ee)     The **Rules** mean the Bankruptcy Rules.

1.02(ff)     **Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest, in property in which the Debtor have an interest to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

1.02(gg)     **Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

1.02(hh)     **Unsecured Claim** means any claim against the Estate that is not a Secured or Administrative Claim.

1.03     **Gender.**  Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context.  Words of any gender shall include each other gender where appropriate.

1.04     **Headings.**  The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

1.05     **Computation of Time.**  In computing any time prescribed herein the provision of Fed. R. Bankr. P. 9006(a) shall apply.

### ARTICLE II
### BASIS OF PLAN

2.01     **Generally.**  The Plan is a plan of reorganization. The Debtor will remain in business following Confirmation. Funding for the Plan will come from the Debtor's business operations.

## ARTICLE III
## HISTORY OF THE DEBTOR'S OPERATIONS

3.01    **History of the Debtor's Operations.**    IMHC was organized as a Texas professional limited liability company on July 19, 2018. The Debtor is in the business of providing in home geriatric medical services in the Austin metropolitan area. The Debtor got behind on its payroll taxes due to slow payments for services from Medicare, health insurance companies, and patients. Then the Debtor took out merchant cash advance loans to stay afloat. The Debtor's cash flow did not support the repayment terms of the merchant advance lenders, leading to the filing of this case. Debtor has increased the efficiency of its administrative functions and payment lag time by insurers has been cut post-pandemic leading to better cash flows.

## ARTICLE IV
## PROVISIONS APPLICABLE TO ALL CLAIMS

4.01    **Treatment of Claims.**    This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 502(a).  However, only Allowed Claims will receive treatment afforded by the Plan.  The Plan is designed to insure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

4.02    **Allowed Claims**.  To receive a distribution under the Plan, a Creditor must have an Allowed Claim.

4.03    **Amount of Claims**.  If the Debtor have scheduled a Claim and has not scheduled such Claim as disputed, contingent, or unliquidated, then the amount scheduled by the Debtor shall control, unless the holder of the Claim has timely filed a proof of claim in a different amount or a party in interest files an objection to the scheduled Claim.  If a Creditor files a proof of claim, then the amount stated in the proof of claim shall control unless the Debtor or a party in interest files an objection to the Claim.  If an objection to a proof of claim or a scheduled Claim is filed, then the amount determined by the Court in a Final Order shall control. If a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

4.04    **Allowance of Post-Petition Interest, Fees and Costs**.  Unless otherwise provided, a Claim shall not be entitled to post-petition interest, fees or costs.

4.05    **Filing of Administrative Claims**.    Any requests for allowance of an Administrative Expense Claim shall be filed no later than sixty (60) days after the Effective Date or shall be barred.

4.06    **Filing of Requests for Post-Petition Fees or Costs**.  Any requests for allowance of post-petition fees or costs pursuant to 11 U.S.C. § 506(b) shall be filed no later than (60) days after the Effective Date or shall be barred.

4.07 **Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of a Pre-Petition Claim at any time prior to the later of sixty (60) days after the Effective Date or thirty (30) days after such Claim is filed. Any proof of claim filed after the applicable Bar Date set by the Court shall be of no force and effect and shall be deemed disallowed.

4.08 Any objection must comply with Local Bankruptcy Rule 3007, be in writing, set out the name of the Creditor who filed the Claim (and any assignee), the dollar amount of the Claim and the character of the Claim. Each specific ground for objection or defense to the Claim shall be listed in a separate paragraph. Service of the objection shall be made upon the attorney of record for the Claimant (or the Creditor directly if not represented by an attorney), the attorney for the Debtor, and any other party entitled to notice under Local Rule 3007. A certificate of service shall be included in each objection and shall comply with Local Bankruptcy Rule 9013(f).

4.09 If an objection to a Claim is filed the holder of the Claim may file a response only within twenty-one (21) days from the mailing date set out in the certificate of service for the objection. Responses may take one of two forms, namely a consent to the objection, or a non-consenting response. A non-consenting response shall state specific reasons for objection to each ground or defense relied upon by the non-consenting party to support allowance of the Claim. Copies of such response shall be served upon the Debtor and its attorney, Frank Lyon. Failure to timely file a response shall result in a deemed consent to the objection, and upon the expiration of the 21-day response period, the Court may enter an order without further notice or hearing. In the event a timely non-consenting response is filed, the Court shall set a hearing.

4.10 All Contested Claims shall be litigated to Final Order; provided, however, that the Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court and further provided that if a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

4.11 **Distributions on Disputed Claims.** If a Claim is not scheduled or is scheduled in the Debtor's Schedules of Liabilities as disputed, contingent or unliquidated, no distribution shall be made to the holder of such a Claim unless a proof of claim was filed by:

(a) June 21, 2024, which was the Bar Date established by the Bankruptcy Court or,

(b) by the date 45 days after the Confirmation Date, if such Claim is a Claim for either (i) damages for rejection at Confirmation of this Plan of an executory contract or (ii) a deficiency created after surrender of property under the Plan.

In addition, no distribution shall be made to the holder of a Claim so long as an objection to the Claim is pending; rather, the amount of the payment shall be held in reserve by the Reorganized Debtor until the objection is resolved. If an objection to a Class 4 Claim is sustained, the Reorganized Debtor will distribute the amount of the Claim *pro rata* to the holders of the remaining Claims in Class 4 along with the next payment to Class 4, and shall re-calculate all future *pro rata* payments on

each of the Class 4 Claims remaining. If an objection is overruled, at the next scheduled distribution under the Plan to the Class of Creditors into which the Claim falls, the Reorganized Debtor shall pay the newly Allowed Claim a sum sufficient to bring that Claimant *in pari passu* with the other Claims in the Class.

4.12    If a Claim is disputed in whole or in part because the Debtor assert a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of the Allowed Claim.  In addition, any party authorized by the Code may request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to 11 U.S.C. § 502(c) at any time.

## ARTICLE V
## ADMINISTRATIVE AND PRIORITY CREDITORS

5.01    **Administrative Expenses.** Each holder of an administrative expense claim allowed under § 503 of the Code shall be paid upon such terms agreed upon between the Debtor and the holder of such claim or, if no agreement is reached, in twelve monthly installments beginning on the Effective Date.

## ARTICLE VI
## CLASSIFICATION OF CLAIMS AND INTERESTS

6.01    **Classification.** Claims and interests are classified as follows:

**Priority Tax Claim of the IRS**.  Allowed Secured and Priority Claims of the Internal Revenue Service.

**Class 1.**    Allowed Secured Claim of ODK Capital, LLC

**Class 2.**    Allowed Administrative Convenience Claims, consisting of Allowed General Unsecured Claims of $2,500.00 or less, and Allowed General Unsecured Claims the holders of which each agree to reduce its Claim to $2,500.00.

**Class 3.**    Allowed General Unsecured Claims other than the Claims in Class 3.

**Class 4.**    Equity Interests in the Debtor.

6.02    **Claims Deemed General Unsecured Claims.** Other than Class 1, all other Claims shall be deemed General Unsecured Claims as of Confirmation and included in either Class 2 or Class 3, as applicable. The Internal Revenue Service filed Notices of Federal Tax Liens against the Debtor on September 18, 2023, November 27, 2023, and January 18, 2024 with the Texas Secretary of State in the respective amounts of $340,966.97, $96,295.05, and $26,594.08.

Amsterdam Capital Solutions, LLC ("Amsterdam") filed its UCC-1 on November 15, 2023, subsequent to the September 18, 2023 Notice of Federal Tax Lien and its lien is therefore inferior to that of the IRS. Biz Fund made a loan to the Debtor on December 14, 2023 but no UCC-1 filing on behalf of Biz Fund has been located by Debtor's counsel. Even if Biz Fund filed a UCC-1, the Notices of Federal Tax Liens filed on September 18 and November 27, 2023 would give the lien of the IRS priority over any lien of Biz Fund. General Unsecured Claims include, but are not limited to, the Claims of:

    a) Biz Fund;
    b) Amsterdam Capital Solutions, LLC

     6.03   **Claims Deemed Partially Secured.** ODK Captial, LLC (aka OnDeck) ("ODK") filed a UCC-1 on December 30, 2022. Pursuant to the Federal Tax Lien Act of 1966 (26 U.S.C. § 6323) ODK's lien would be superior to that of the IRS if ODK's collateral was acquired within 45 days of the filing of the Notice of Federal Tax Lien, which would have been November 1, 2023 with respect to the Notice of Federal Tax Lien filed on September 18, 2023. All of the Debtor's collectible accounts receivable were generated after November 1, 2023, resulting in the IRS's lien on accounts receivable as of the Petition Date being $139,288.67. The Notice of Federal Tax Lien field September 18, 2023 is in the amount of $340,966.97, leaving no accounts receivable to apply to the lien of ODK. The only assets of the Debtor attributable to the lien of ODK are $3,575.00 in equipment and domain name, which the Debtor owned on the date ODK's UCC-1 was filed. The Secured Claim of ODK is therefore $3,575.00 with the balance of ODK's claim being a General Unsecured Claim.

## ARTICLE VII
## TREATMENT OF CLAIMS AND INTERESTS

     7.01   **Allowed Secured and Priority Claim of the Internal Revenue Service (the "IRS").** The IRS shall have an Allowed Secured and Priority Claim in the amount of $404,716.44, based upon its timely filed proof of claim, for the payroll and income taxes owing by the Debtor. The exact amount will be adjusted to reflect the amounts due once the returns whose amounts have been estimated in the proof of claim have been filed.

     The Allowed Claims of the IRS shall be paid in equal monthly installments beginning on the Effective Date with interest at the fixed rate of 8.0% so that they will be paid within 60 months of the Petition Date. Based upon the IRS's timely filed proof of claim (and assuming an Effective Date of September 12, 2024) the monthly installments would be $$5,000.00 for months 1-6; $6,000.00 for month 7-12; $7,500.00 for months 13-24; then $9,000.00 per month until paid in full, with the final payment depending on the amount needed to pay the balance adjusted to reflect the actual, rather than estimated, amount due.

     7.02   **Class 1 Claim – Allowed Secured Claim of ODK Capital, LLC a/k/a OnDeck ("ODK").** ODK shall have an Allowed Secured Claim of $3,575.00, which shall be paid in 60 equal installments with interest at a fixed rate of 6.0% beginning on the Effective Date. The amount of each monthly installment shall be $69.11. Class 1 is impaired.

7.03 **Class 2 Claims - Allowed Administrative Convenience Claims, consisting of Allowed General Unsecured Claims of $2,500.00 or less, and Allowed General Unsecured Claims the holders of which each agree to reduce their Claim to $2,500.00.** Each holder of an Allowed Unsecured Claim of $2,500.00 or less shall be given the option to be treated as Class 3 creditor or to be paid the lesser of $250.00 or the Allowed Amount of such Claim in cash on the Effective Date. Any holder of an Allowed Class 3 Claim of $2,500.00 or more may opt into Class 2 and shall be deemed to have not only agreed to reduce the Claim as scheduled or filed to an Allowed Claim of $2,500.00, but also to be paid as a Class 2 Claim on the Effective Date and to accept such payment in full satisfaction of its Claim. Class 2 is Impaired.

7.04 **Class 3 Claims – All Other General Unsecured Claims.** All Allowed Class 3 Claims, which shall not accrue interest, shall be given the option to be treated as a Class 2 Claim in the Allowed Amount of $2,500.00 or to be paid monthly *pro rata* from the Debtor's Disposable Income for the 60 months of the Plan. Class 3 claims are estimated to receive 38.5% of the Allowed Amounts of their Claims over the life of the Plan. Please see Exhibit A for estimated distributions to each member of Class 3. Class 3 is Impaired.

## ARTICLE VIII
## IMPLEMENTATION OF THE PLAN

8.01 **Reserve.** One reason the Debtor filed this case was due to cash flow problems, rendering the Debtor unable to meet ongoing expenses. In order to avoid a recurrence of such a situation and to help make the plan feasible, the Plan calls for the establishment of a reserve of $40,000.00 as shown in Exhibit A. $40,000.00 represents approximately 25% of the average monthly operating expenses of the Debtor plus the monthly payment on the Allowed Claims of the IRS and Class 1 secured Claims.

As a practical matter, the Debtor cannot distribute all of its net income every month. For example, assume that the Debtor's net income is $10,000 in a given month after payment of all ordinary operating expenses such as payroll, payroll taxes, purchase of materials, insurance, rent, payments to administrative claimants, payments to the IRS for its secured and priority Claims and Class 1 and all of the other ordinary expenses that an entity in the Debtor's business must pay to operate that are due in that month. The Debtor pays its administrative staff in arrears every other Friday and its providers in arrears every other alternating Friday, so that the Debtor pays a portion of payroll every Friday. If the Debtor distributes all $10,000.00 of net income at the end of a month – leaving no cash in the bank – the Debtor will have between one and six days (depending on when the end of the month falls) to collect enough funds to cover its usual weekly payroll, payroll taxes and all of the other expenses that come due that period, which is approximately $30,000.00 per week. It was a cash flow crunch that caused the Debtor to take out additional loans, which in turn created another cash flow crunch. Requiring the Debtor to empty its bank accounts at the end of every month would re-create the same scenario that put the Debtor in this case. The reserve will give the Debtor the cash cushion that it needs in order to not only operate, but to fulfill its obligations under this Plan.

If the Debtor must dip into its reserve to pay its ordinary operating expenses, the payments due to administrative claimants or the payments due to the IRS for its secured and priority Claims and Class 1, the Debtor may recoup the amount needed to restore the reserve to $40,000.00 when calculating Disposable Income for the next month. If more than one month is needed to restore the reserve to $40,000.00, the Debtor may recoup the amount needed to restore the reserve to $40,000.00 over as many months as are needed to do so.

This is a 60 month plan rather than a 36 month plan. Extension of the Plan term to 60 months allows the Debtor to compensate Unsecured Creditors for the accumulation of the reserve.

8.02 **In General.** If the Plan is approved by the Court, a Confirmation Order will be entered. The Debtor will continue to operate as Debtor-in-possession and discharge its duties under the Code until the Effective Date of the Plan. Upon the Effective Date of the Plan, the Reorganized Debtor will continue to operate for the benefit of its Creditors in compliance with the terms of the confirmed Plan.

8.03 **Authorization.** The Debtor shall be responsible for complying with the terms and provisions of the Plan as it may be modified as allowed by the Bankruptcy Code. To this end, the Debtor is authorized and directed to execute all documents necessary to effectuate the terms of the Plan.

8.04 **Reliance on other Parties.** In connection with the Plan, the Debtor may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by it and such reliance shall presumptively establish good faith.

8.05 **Projections.** The projections attached as Exhibit A are estimations. Where actual revenue varies from the projections, actual revenue (collections) will be used to calculate Disposable Income for purposes of determining amounts to be distributed to Class 3. The Debtor believes that revenue will remain at or above the levels projected in Exhibit A because the Debtor's businesses has stabilized.

8.06 **Disbursing Agent.** Provided that the Plan is confirmed as "consensual" under 11 U.S.C. §1191(a), the Reorganized Debtor shall be the disbursing agent under the Plan. If the Plan is confirmed as "non-consensual" under 11 U.S.C. §1191(b) because there are one or more Classes of Claims that do not accept the Plan due to their failure to vote rather than because they file an objection to the Plan and/or to reject the Plan, the Debtor intends to ask the Court to allow the Reorganized Debtor to be the disbursing agent under the Plan.

8.07 **Possible Chapter 5 Causes of Action.** Chapter 5 of the Bankruptcy Code sets forth certain causes of action, often referred to as "clawbacks," whereby a debtor may seek to recover money or property from a person or entity paid or transferred by the debtor prior to the filing of a bankruptcy case. The Debtor and its counsel have reviewed the Debtor's financials to determine if any such potential causes of action exist, and if so, whether they merit pursuing.

With respect to payments made to non-insiders (using the term "insider" as defined in Section 101(31) of the Bankruptcy Code), the Debtor may elect to pursue the return of payments made within 90 days of the Petition Date to ODK totaling $15,494.02, Amsterdam totaling $14,825.00, and Biz Fund totaling $17,570.00.

Turning to payments made to insiders within one year of the Petition Date, one person is an "insider" under the Bankruptcy Code: Dr. Yun Kim. Dr. Yun Kim is the owner of the Debtor. Dr. Kim was repaid $23,000.00 of the $23,000.00 he loaned to the Debtor on September 7, 2023 to cover payroll and other operating expenses of the Debtor. Dr. Kim is one of the supervising physicians of the Debtor and did not receive any compensation for such in the year preceding the filing of the Case. His normal annual compensation would have been well in excess of $100,000.00. Accordingly, the Debtor will not be pursuing a clawback of the $23,000.00 paid to Dr. Kim.

## ARTICLE IX
## EFFECT OF CONFIRMATION

9.01    **Plan Binding.**  Pursuant to 11 U.S.C. §§ 1141 and 1191, the provisions of the confirmed Plan shall bind the Debtor and each of the Creditors, whether or not the Creditor's Claim is impaired under the Plan, whether or not a Creditor has filed a proof of claim in an amount or category that is different from that Creditor's treatment in the Plan and whether or not such Creditor has accepted the Plan.  The distributions provided for Creditors shall not be subject to any claim by another Creditor by reason of any assertion of a contractual right of subordination.

9.02    **Status of Property upon Confirmation**. Property of the Estate shall vest in the Debtor following Confirmation.

9.03    **Automatic Stay Continues after Confirmation**. The automatic stay imposed under §362 of the Bankruptcy Code shall continue after Confirmation until the later of discharge of the Debtor, or dismissal or closing of the Case to prevent Creditor collection efforts other than as provided in the Plan.

9.04    **Treatment of Unexpired Leases and Executory Contracts.**  Confirmation of the Plan shall act as the assumption by the Debtor of any unexpired leases and executory contracts to which it is a party.

9.05    **Release of Liens of Unsecured Creditors.**  Confirmation of the Plan shall be a determination that all Claims described in Section 6.02 are General Unsecured Claims and that all liens claimed by such creditors are released. The Debtor shall be authorized to execute and file with the appropriate authority releases of any and all such liens on the Effective Date.

9.06    **Liens of the IRS and ODK.**  The Liens of the IRS on all the Debtor's assets other than to equipment and domain name and ODK on the Debtor's equipment and domain name shall remain in full force and effect upon Confirmation, but shall be deemed released upon the Debtor's payment of the amounts provided in Sections 7.01 and 7.02, respectively without the need for any

party to file a UCC-5 termination with the Texas Secretary of State.  The Debtor shall be authorized to execute and file with the appropriate authorities releases of such liens upon payment of the amounts provided for in Sections 7.01 and 7.02, respectively. In addition, the Debtor shall be authorized to file with the appropriate authorities releases of ODK's lien on all assets of the Debtor other than its equipment existing as of the Petition Date and its domain name.

## ARTICLE X
## LIQUIDATION ANALYSIS

10.01  **Liquidation.**  The Code requires that the Plan provide a liquidation analysis so that creditors can compare what they would receive under the Plan versus a hypothetical liquidation of the Debtor's assets under Chapter 7 of the Code. The Debtor estimates that a liquidation of the Debtor's assets would result in the following:

| Assets | Value | At Liquidation | % of Value at Liquidation |
|---|---|---|---|
| Estimated Cash on Hand at Closing* | $5,000 | $5,000 | 100% |
| Furniture, Fixtures, and Equipment* | $3,575 | $1,788 | 50% |
| Accounts Receivable* | $150,000 | $135,000 | 90% |
| Total | $158,575 | $141,788 | 89% |

*Subject to first lien of IRS
Secured Claims:

| | |
|---|---|
| IRS | $404,716.44* |
| ODK Capital | $326,966.54* |
| Total | $731,682.98 |

*Per proof of claim
Claims with lien priorities below the above parties are wholly unsecured.

Total Secured & Priority Claims:   $731,682.98

Gross Amount to be Distributed:

Liquidation value from above   $141,788

Calculation of Chapter 7 Trustee Fees:

| | |
|---|---|
| 25% of first $5,000 | $ 1,250 |
| 10% of ($50,000-$5,001) $44,999. | $ 4,450 |
| 5% of ($141,788-$50,001)  $91,787 | $ 4,589 |
| | $10,289 |

Available for Unsecured Creditors:

Liquidation Value from Above $141,788
Chapter 7 Trustee Fee ($10,289)
IRS – Class 1 ($129,841)
ODK – Class 2 ($1,658)
Remainder $0

Net Available for Unsecured Creditors: $0

10.02 **Estimated Distribution under the Plan.** The Debtor estimate that $75,000.00 will be available to distribute to Allowed Unsecured Claims. That would result in the following distribution to Allowed Unsecured Claims:

| | |
|---|---|
| Non-Insider Unsecured Claims | $ 52,351.00 |
| Unsecured portion of claims with UCC-1 liens on file | $414,971.00 |
| TOTAL | $467,322.00 |
| Estimated funds available | $150,000.00 |
| Estimated Unsecured Claims | $467,322.00 |

Estimated percentage distribution to Allowed Unsecured Claims: 32.1%

Thus, the Debtor believe that Unsecured Creditors will receive significantly more under the Plan than in liquidation of the Debtor's assets.

## ARTICLE XI
## PROJECTIONS

11.01 Attached hereto as Exhibit A are the Debtor's projections with respect to the ability of the Debtor to make payments under the Plan.

## ARTICLE XII
## DISCHARGE

12.01 If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date, the Debtor will be discharged from any debt that arose before Confirmation, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

    i.   Imposed by this plan
    ii.  To the extent provided in § 1141(d)(6).

12.02 If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion

of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

    i.    On which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

    ii.    Excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE XIII
## RETENTION OF JURISDICTION

13.01 After confirmation, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor arising prior to the confirmation, to hear and determine all causes of action that exist in the favor of the Debtor that arise prior to the confirmation, to hear and determine all matters relating to the administration of the Debtor's Estate, to modify the Plan, and to make such other orders as are necessary or appropriate to effectuate the provisions of the Plan in accordance with the Code, including interpretation and implementation of the Plan.

## ARTICLE XIV
## DEFAULT AND OTHER RELATED PROVISIONS

14.01 **General.** In the event of a default by the Debtor under the Plan, creditors may exercise any rights granted to them under documents executed to evidence the Plan or any right available to creditors under applicable non bankruptcy law. In the absence of documents executed to evidence the Plan, this Plan may be enforced as a contract. Notwithstanding any other provision, any creditor alleging a default shall give the Debtor thirty (30) days notice and an opportunity to cure before exercising any rights available upon default.

14.02 In the event of a default by a creditor, Debtor may enforce this plan as a contract in a court of competent jurisdiction. The Debtor may escrow payments to any creditor which defaults under the Plan until the default is cured. The Debtor shall give the creditor thirty (30) days notice and an opportunity to cure before exercising this provision.

14.03 Conversion to Chapter 7 shall be an additional remedy for default prior to substantial consummation of the Plan. The Debtor may voluntarily convert its case to one under Chapter 7 at anytime prior to discharge.

## ARTICLE XV
## MISCELLANEOUS

15.01 **Request for Relief under 11 U.S.C. § 1191(b).** In the event any impaired Class fails to accept this Plan in accordance with 11 U.S.C. § 1191(a), the Debtor reserve the right to, and does hereby request the Court to, confirm the Plan in accordance with 11 U.S.C. § 1191(b).

15.02 **Addresses for Payment; Returned and Uncashed Checks.**

a) **Addresses for Disbursements.** Disbursements shall occur by check and may be delivered by Reorganized Debtor to (i) the address for payment set forth on a proof of claim filed by the holder of an Allowed Claim or its authorized agent, (ii) at the address set forth in any written notices of change of address delivered to the Reorganized Debtor, counsel for the Debtor or Frank B. Lyon, Post Office Box 50210, Austin, Texas 78763, or (iii) if the holder of an Allowed Claim has not filed a proof of claim or otherwise provided the Debtor or counsel for the Debtor with notice of its address, in the address set forth in the applicable schedule filed by the Reorganized Debtor in this case. If any distribution to a holder of an Allowed Unsecured Claim is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such holder of an Allowed Claim unless and until the Reorganized Debtor or its counsel is notified in writing of such holder of an allowed claim then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder as soon as practicable. Undeliverable distributions shall remain in the possession of the Reorganized Debtor until such time as a distribution becomes deliverable and shall not be supplemented with any interest, dividends or other accruals of any kind. If, despite reasonable effort, the Reorganized Debtor is unable to obtain the information necessary to deliver a distribution within six months following the return of the undeliverable distribution, the Reorganized Debtor shall be authorized to treat such holder of an Allowed Claim current and future claims as an Unclaimed Distribution (defined below).

b) **No Fractional Disbursements.** Notwithstanding anything contained herein to the contrary, payments of fractional dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding down of such fractions. Further, if the actual monthly distribution claim as allowed claim is less than $100.00 no payment to a creditor shall occur unless the distribution as accumulated is in excess of $100.00 on or before the next annual payment date following the Effective Date.

c) **Time Bar to Cash Distributions.** Holders of Allowed Claims shall have 120 days from the date of issuance to negotiate a check issued by the Reorganized Debtor on account of distribution. If a holder of Allowed Claims fails to negotiate a disbursement check within this 120-day period, the Reorganized Debtor or counsel for the Debtor shall have the right to void the check, and any current and future claims of such holder of allowed claim to the Dividend shall be treated as an Unclaimed Distribution (defined below).

d) **Unclaimed Distributions and Reversion.** Any distribution made by the Reorganized Debtor to a holder of an Allowed Claim under this paragraph that is undeliverable for more than six months for lack of address, or has not been negotiated within 120 days from the date of issuance on the distribution check shall

become an "Unclaimed Distribution." Unclaimed Distributions shall be deemed unclaimed property under section 347(d) of the Bankruptcy Code and shall revest with the Reorganized Debtor and held by the Reorganized Debtor within the Reorganized Debtor's account. The Claim of any holder of an allowed claim or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

(e) Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof.  Requests for reissuance of any check shall be made to the Debtor's attorney, Frank B. Lyon, at PO Box 50210, Austin, Texas 78763, or by email to frank@franklyon.com, by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of such a voided check must be made to the Debtor's attorney in writing within 180 days after the date of delivery of such check. After such date, all claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall be returned to the Debtor.

15.03 **Governing Law.**  Unless a rule or law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

DATED this 4th day of September 2024.

LAW OFFICES OF FRANK B. LYON
Physical Address:

3800 North Lamar Boulevard, Suite 200
Austin, Texas 78756
Mailing Address:
Post Office Box 50210
Austin, Texas 78763
(512) 345-8964
(512) 697-0047 (fax)

Email:  frank@franklyon.com

By:  _/s/ Frank B. Lyon_
    FRANK B. LYON
    State Bar No. 12739800
    ATTORNEY FOR DEBTOR
Integrative Medical Home Care, PLLC.
By: _/s/ Yun Kim, MD, President_
    Yun Kim, MD, President

## <u>CERTIFICATE OF SERVICE</u>

  I, Frank B. Lyon, counsel for the Debtor-in-Possession, by my signature below, hereby certify that on the 4th day of September 2024, a true and correct copy of the foregoing Plan of Reorganization was served via the Court's CM/ECF system to all parties requesting notice thereby and to the persons shown below by first class US mail:

**<u>United States Trustee</u>**
Jessica Hanzlik – United States Trustee
903 San Jacinto Blvd., Suite 230
Austin, TX 78701
*ECF notification*

**<u>Subchapter V Trustee</u>**
Eric Terry
3511 Broadway
San Antonio, TX 78209
Email:  eterry@ericterrylaw.com
*ECF notification*

**<u>Counsel for U.S. IRS</u>**
Steven B. Bass
Asst. U.S. Attorney
903 San Jacinto Blvd., Suite 334
Austin, TX 78701
Email:cmorrow@shergardner.com
*ECF notification*

**<u>Debtor</u>**
Integrative Medical Home Care, PLLC.
Attention:  Yun Kim, MD, President
*Via email*: ykim@imedicalhomecare.com
*Via email:* mbarnes@imedicalhomecare.com


*/s/ Frank B. Lyon*
Frank B. Lyon

# EXHIBIT
# A

|  | **Year 1** | | | | | |
|  | Oct | Nov | Dec | Jan-25 | Feb | Mar |
| **Beginning Cash Balance** | 17,500 | 22,724 | 10,241 | 16,564 | 5,081 | 12,605 |
|  |  |  |  |  |  |  |
| **Avg Monthly Revenue** | 106,000 | 109,400 | 109,400 | 109,400 | 109,400 | 112,800 |
|  |  |  |  |  |  |  |
| **Expense** |  |  |  |  |  |  |
| **Reserve** | 1,000 | 0 | 1,000 | 1,000 | 3,000 | 4,000 |
| **Contract Labor** |  |  |  |  |  |  |
| Accountant (average) |  |  | 600 |  |  | 1,000 |
| Providers (average) | 4,000 | 4,000 | 6,000 | 4,000 | 4,000 | 6,000 |
| Legal Fees (average) |  |  |  |  |  |  |
| Bankruptcy Attorney | 4,000 | 4,000 | 2,000 | 2,000 | 4,000 | 4,000 |
| SubChapter 5 Trustee | 1,000 | 1,000 | 1,000 | 1,000 |  |  |
| **Insurance** |  |  |  |  |  |  |
| Principal | 568 | 568 | 568 | 568 | 568 | 568 |
| tmic malpractice (average) | 500 | 500 | 500 | 500 | 500 | 500 |
| TMLT malpractice (average) |  |  | 2,200 |  |  | 2,200 |
| Texas Mutual Wrkrs Comp | 364 | 364 | 364 | 364 | 364 | 364 |
| Business | 204 | 204 | 204 | 204 | 204 | 204 |
| **Meals and Entertainment** | 100 | 100 | 100 | 100 | 100 | 100 |
| **Office Supp/Software** |  |  |  |  |  |  |
| Practice Fusion (EMR) | 1,747 | 1,747 | 1,747 | 1,747 | 1,747 | 1,747 |
| Trizetto (Clearinghouse) | 900 | 900 | 900 | 900 | 900 | 900 |
| **Payroll (average)** | 71,250 | 92,250 | 71,250 | 92,250 | 71,250 | 71,250 |
| **Payroll Taxes (average)** | 5,451 | 7,057 | 5,451 | 7,057 | 5,451 | 5,451 |
| **Other Taxes (average)** |  |  |  |  | 600 |  |
| **Postage (average)** | 60 | 60 | 60 | 60 | 60 | 60 |
| **Telephone (Verizon/Nextiva)** | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 |
| **Bank Charges** | 80 | 80 | 80 | 80 | 80 | 80 |
| **Misc Office Expenses** | 400 | 400 | 400 | 400 | 400 | 400 |
| **Mcrsft,Adobe, PDF** | 472 | 472 | 472 | 472 | 472 | 472 |
| **Computer/Internet/IT** | 421 | 421 | 421 | 421 | 421 | 421 |
| **Computer Hardware** | 500 | 500 | 500 | 500 | 500 | 500 |
| **Rent** | 795 | 795 | 795 | 795 | 795 | 795 |
|  |  |  |  |  |  |  |
| **TOTAL EXPENSES** | 95,207 | 116,814 | 98,007 | 115,814 | 96,807 | 102,407 |
|  |  |  |  |  |  |  |
| **Plan Payments** |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
| **IRS** | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| **Class 1 ODK** | 69 | 69 | 69 | 69 | 69 | 69 |
| **Class 2 - Admin Convenience** | 500 |  |  |  |  |  |
|  |  |  |  |  |  |  |
| **Ending Cash Balance Not** |  |  |  |  |  |  |
| **Including Reserve** | 22,724 | 10,241 | 16,564 | 5,081 | 12,605 | 17,928 |
|  |  |  |  |  |  |  |
| **Profit/Loss** |  |  |  |  |  |  |
| **Before Plan Payments** | 10,793 | (7,414) | 11,393 | (6,414) | 12,593 | 10,393 |

### Year 1

|  | Apr | May | Jun | July | Aug | Sept | Total |
|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | 17,928 | 26,252 | 15,969 | 23,393 | 35,716 | 25,433 | |
| | | | | | | | |
| **Avg Monthly Revenue** | 112,800 | 112,800 | 112,800 | 112,800 | 112,800 | 112,800 | 1,333,200 |
| | | | | | | | |
| **Expense** | | | | | | | |
| **Reserve** | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 40,000 |
| **Contract Labor** | | | | | | | |
|   Accountant (average) | | | 600 | | | 600 | 2,800 |
|   Providers (average) | 4,200 | 4,200 | 6,300 | 4,200 | 4,200 | 6,300 | 57,400 |
|   Legal Fees (average) | | | | | | | |
|    Bankruptcy Attorney | 4,000 | | | | | | 24,000 |
|    SubChapter 5 Trustee | | | | | | | 4,000 |
| **Insurance** | | | | | | | |
|   Principal | 568 | 568 | 568 | 568 | 568 | 568 | 6,821 |
|   tmic malpractice (average) | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
|   TMLT malpractice (average) | | | 2,200 | | | 2,200 | 8,800 |
|   Texas Mutual Wrkrs Comp | 364 | 364 | 364 | 364 | 364 | 364 | 4,367 |
|   Business | 204 | 204 | 204 | 204 | 204 | 204 | 2,453 |
| **Meals and Entertainment** | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| **Office Supp/Software** | | | | | | | |
|   Practice Fusion (EMR) | 1,747 | 1,747 | 1,747 | 1,747 | 1,747 | 1,747 | 20,966 |
|   Trizetto (Clearinghouse) | 900 | 900 | 900 | 900 | 900 | 900 | 10,800 |
| **Payroll  (average)** | 71,250 | 92,250 | 71,250 | 71,250 | 92,250 | 71,250 | 939,000 |
| **Payroll Taxes (average)** | 5,451 | 7,057 | 5,451 | 5,451 | 7,057 | 5,451 | 71,834 |
| **Other Taxes  (average)** | | | | | | | 600 |
| **Postage (average)** | 60 | 60 | 60 | 60 | 60 | 60 | 720 |
| **Telephone (Verizon/Nextiva)** | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 1,396 | 16,747 |
| **Bank Charges** | 80 | 80 | 80 | 80 | 80 | 80 | 960 |
| **Misc Office Expenses** | 400 | 400 | 400 | 400 | 400 | 400 | 4,800 |
| **Mcrsft,Adobe, PDF** | 472 | 472 | 472 | 472 | 472 | 472 | 5,660 |
| **Computer/Internet/IT** | 421 | 421 | 421 | 421 | 421 | 421 | 5,047 |
| **Computer Hardware** | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| **Rent** | 795 | 795 | 795 | 795 | 795 | 795 | 9,542 |
| | | | | | | | |
| **TOTAL EXPENSES** | 98,407 | 117,014 | 99,307 | 94,407 | 117,014 | 99,307 | 1,250,515 |
| | | | | | | | |
| **Plan Payments** | | | | | | | |
| | | | | | | | |
| **IRS** | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 66,000 |
| **Class 1 ODK** | 69 | 69 | 69 | 69 | 69 | 69 | 828 |
| **Class 2 - Admin Convenience** | | | | | | | |
| | | | | | | | |
| **Ending Cash Balance Not** | | | | | | | |
|  **Including Reserve** | 26,252 | 15,969 | 23,393 | 35,716 | 25,433 | 32,857 | |
| | | | | | | | |
| **Profit/Loss** | | | | | | | |
|  **Before Plan Payments** | 14,393 | (4,214) | 13,493 | 18,393 | (4,214) | 13,493 | 65,808 |

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | TOTAL | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| Beginning Cash Balance | 17,500 | 32,857 | 44,917 | 43,043 | 34,057 | | |
| | | | | | | | |
| Annual Revenue | 1,333,200 | 1,366,530 | 1,400,693 | 1,435,711 | 1,471,603 | 7,007,737 | Increased revenue 2.5% per year beginning year 2 |
| | | | | | | | |
| Expense | | | | | | | |
| Reserve contribution | 40,000 | | | | | 40,000 | Deleted the $40k reserve contribution in years 2-5 |
| Contract Labor | | | | | | | |
| Accountant (average) | 2,800 | 2,870 | 2,942 | 3,015 | 3,091 | 14,718 | Increased by 2.5% per year |
| Providers (average) | 57,400 | 58,835 | 60,306 | 61,814 | 63,359 | 301,713 | increased provider contract labor by 2.5% annually |
| Legal Fees (average) | | | | | | | |
| Bankruptcy Attorney | 24,000 | 16,000 | | | | 40,000 | |
| SubChapter 5 Trustee | 4,000 | | | | | 4,000 | |
| Insurance | | | | | | | |
| Principal | 6,821 | 6,991 | 7,166 | 7,345 | 7,529 | 35,851 | Increased 2.5% per year |
| TMIC malpractice (average) | 6,000 | 6,150 | 6,304 | 6,461 | 6,623 | 31,538 | Increased 2.5% per year |
| TMLT malpractice (average) | 8,800 | 9,020 | 9,246 | 9,477 | 9,714 | 46,256 | Increased 2.5% per year |
| Texas Mutual Wrkrs Comp | 4,367 | 4,476 | 4,588 | 4,702 | 4,820 | 22,953 | Increased 2.5% per year |
| Farmers Business | 2,453 | 2,515 | 2,578 | 2,642 | 2,708 | 12,896 | Increased 2.5% per year |
| Meals and Entertainment | 1,200 | 1,230 | 1,261 | 1,292 | 1,325 | 6,308 | Increased 2.5% per year |
| Office Supp/Software | | | | | | | |
| Practice Fusion (EMR) | 20,966 | 22,000 | 23,000 | 24,000 | 25,000 | 114,966 | Increased by $1,000 per year |
| Trizetto (Clearinghouse) | 10,800 | 11,070 | 11,347 | 11,630 | 11,921 | 56,768 | Increased by 2.5 % per year |
| Payroll (average) | 939,000 | 967,170 | 996,185 | 1,026,071 | 1,056,853 | 4,985,279 | increased payroll by 3.0% annually |
| Payroll Taxes (average) | 71,834 | 73,989 | 76,208 | 78,494 | 80,849 | 381,374 | increased payroll taxes by 3.0% annually |
| Other Taxes (average) | 600 | 615 | 630 | 646 | 662 | 3,154 | Increased by 2.5% per year |
| Postage (average) | 720 | 738 | 756 | 775 | 795 | 3,785 | Increased by 2.5% per year |
| Telephone (Verizon/Nextiva) | 16,747 | 17,165 | 17,595 | 18,034 | 18,485 | 88,026 | Increased by 2.5% per year |
| Bank Charges | 960 | 984 | 1,009 | 1,034 | 1,060 | 5,046 | Increased by 2.5% per year |
| Misc Office Expenses | 4,800 | 4,920 | 5,043 | 5,169 | 5,298 | 25,230 | Increased by 2.5% per year |
| Mcrsft,Adobe, PDF | 5,660 | 5,801 | 5,946 | 6,095 | 6,247 | 29,749 | Increased by 2.5% per year |
| Computer/Internet/IT | 5,047 | 5,173 | 5,303 | 5,435 | 5,571 | 26,529 | Increased by 2.5% per year |
| Computer Hardware | 6,000 | 6,150 | 6,304 | 6,461 | 6,623 | 31,538 | Increased by 2.5% per year |
| Rent | 9,542 | 9,780 | 10,025 | 10,275 | 10,532 | 50,154 | Increased by 2.5% per year |
| | | | | | | | |
| Total Expenses BEFORE Plan Payments | 1,250,515 | 1,233,642 | 1,253,739 | 1,290,869 | 1,329,064 | 6,357,829 | |
| | | | | | | | |
| Plan Payments | | | | | | | |
| | | | | | | | |
| IRS | 66,000 | 90,000 | 108,000 | 108,000 | 120,371 | 492,371 | |
| Class 1 ODK | 828 | 828 | 828 | 828 | 828 | 4,140 | |
| Class 2 Admin Convenience | 500 | 0 | 0 | 0 | 0 | 500 | |
| Class 3 General Unsecured (estimate) | 0 | 30,000 | 40,000 | 45,000 | 35,000 | 150,000 | |
| | | | | | | | |
| Total Plan Payments | 67,328 | 120,828 | 148,828 | 153,828 | 156,199 | 647,011 | |
| | | | | | | | |
| Ending Cash Balance not including reserve | 32,857 | 44,917 | 43,043 | 34,057 | 20,397 | | |
| | | | | | | | |
| Profit/Loss BEFORE Plan payments | 65,808 | 132,888 | 146,954 | 144,841 | 142,540 | 633,032 | |